UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY JOHN HANSEN,

                     Petitioner,                   Case No. 1:14-cv-124

v.                                        Honorable Paul L. Maloney

DeWAYNE BURTON,

                     Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

### Factual Allegations

Petitioner Jeffery John Hansen presently is incarcerated at the Richard A. Handlon Correctional Facility in Ionia, Michigan. On March 26, 2010, a Kent County Circuit Court jury convicted Petitioner of several charges that had been consolidated for trial including possession of child sexually abusive material in violation of MICH. COMP. LAWS § 750.145(c)[1]; using a computer to commit a crime in violation of MICH. COMP. LAWS § 752,797(3)(d); and two counts of first-degree criminal sexual conduct (victim under 13 years of age) in violation of MICH. COMP. LAWS § 750.520(1)(a).

The four charges did not all arise from one criminal incident. The two counts of first-degree criminal sexual conduct arose from an incident that occurred on or about June 19, 2009. The other two counts arose from the presence on Petitioner's computer and an external hard drive of child sexually abusive material. The presence of that material on Petitioner's computer and hard drive were not directly related to the criminal sexual conduct on June 19. The material was discovered, however, during the investigation of the June 19 crime.

The prosecutions of the criminal sexual conduct charges, on the one hand, and the child sexually abusive material charges, on the other hand, proceeded separately until February 12, 2010. On that date, the trial court granted the prosecution's motion to consolidate the two cases for trial.

---

[1]As explained below, the original charge was not possession of child sexually abusive material, but making or producing such material. Indeed, the jury convicted Petitioner of that crime. Prior to sentencing, however, the Michigan Supreme Court rendered its decision in *People v. Hill,* 786 N.W.2d 601 (Mich. 2010). In *Hill*, the court overturned a court of appeals decision that considered mere copying of child pornography for personal use to constitute making or producing it, a 20-year felony. That change of the law rendered the proofs against Petitioner insufficient with regard to the making or producing count. The trial court permitted the prosecutor to amend the information, after conviction, to change the charge to possession of child sexually abusive material. The court then sentenced Petitioner as if he had been convicted of that "lesser included" offense.

(Consolidation Hr'g Tr., PageID.120.) [2]  The court found persuasive the prosecutor's argument that consolidation would cause no additional prejudice because MICH. COMP. LAWS § 768.27a[3] would permit the introduction of evidence relating to the criminal sexual conduct charges in a separate trial on the child sexually abusive material charges, and vice-versa. (*Id*.) Petitioner's counsel recognized that separate trials would not avoid the jury hearing all the evidence anyway, so she posed no objection to the consolidation. (*Id*.)

The first witness at the consolidated trial was Petitioner's eight-year-old stepdaughter, Abigail. Abigail testified that one evening, while her mother was working, she and Petitioner were watching television. (Trial Tr. I, PageID.258, 261.) She testified that Petitioner "did sucks" to her by putting his penis and a purple toy in her butt. (Id., PageID.259.) Petitioner made her "pinky swear" not to tell anyone. (*Id*., PageID.258-59.) Nonetheless, Abigail told her grandmother, Petitioner's mother. (*Id*. PageID.260.) She later told her mother and her mother's friend Ashlee. (*Id*.)

Dr. Eugene Shatz, chief of adolescent medicine at Helen DeVos Children's Hospital, testified that he examined Abigail on July 1, 2009, at the Children's Assessment Center. (*Id*.,

---

[2]Petitioner provided several transcripts of the trial court proceedings as an attachment to his motion to amend the petition. The attachment that includes the transcripts is docketed at ECF No. 8-2. The transcripts shall be referenced as follows:

February 12, 2010 Motion to Consolidate Hearing       (Consolidation Hr'g Tr., PageID.__)
March 22, 2010 Trial Transcript (Volume 1)  (Trial Tr. I, PageID.__)
March 24, 2010 Trial Transcript  (Volume 2) (Trial Tr. II, PageID.__)
March 25, 2010 Trial Transcript  (Volume 3) (Trial Tr. III, PageID.__)
March 26, 2010 Trial Transcript  (Volume 4) (Trial Tr. IV, PageID.__)
August 10, 2010 Sentencing Transcript          (Sentencing Tr. I, PageID.__)
September 14, 2010 Sentencing Transcript          (Sentencing Tr. II, PageID.__).

[3]MICH. COMP. LAWS § 768.27a(1) provides "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

PageID.267.) Dr. Shatz was permitted to testify with regard to his personal observations, but also as an expert with regard to the physical and behavioral manifestations of child sexual abuse. (*Id.*, PageID.266-67.) Dr. Shatz testified that given the medical history and his findings upon physical examination, Abigail's disclosure with regard to the events was consistent with the physical findings. (*Id.*, PageID.269.) Petitioner's counsel also elicited from Dr. Shatz, however, that whether his physical examination found something or found nothing, it could confirm the child's story. (*Id.*) Dr. Shatz went so far as to say that the disclosure itself, if it is age-appropriate, is frequently the only part of the physical examination that confirms child sexual abuse. (*Id.*)

Abigail's mother, Petitioner's wife, Amanda Hansen testified that Abigail informed Amanda and Amanda's friend Ashlee what had happened between Abigail and the Petitioner. (*Id.*, PageID.273.) The next day Amanda took Abigail to her pastor and then to Abigail's pediatrician's office. (*Id.*, PageID.274-76.) She contacted Child Protective Services; a detective arrived at their home to investigate that same day. (*Id.*, PageID.276-79.) The detective took several items from the home at that time. (*Id.*) He also later obtained Petitioner's computer and Blackberry from Amanda. (*Id.*)

Ashlee Norton, Amanda's friend, testified that she was present when Abigail disclosed the sexual abuse. (*Id.*, PageID.286-87.)

Physician's assistant Jamie Noorman testified that she examined Abigail when Amanda brought her in to the pediatrician's office. (Trial Tr. III, PageID.330.) PA Noorman told Amanda "based on what Abigail had told [PA Noorman], [PA Noorman] felt that–very compelled that something had happened to her and that this needed to be reported to the police immediately." (*Id.*, PageID.332.) PA

Noorman also testified that she was concerned for the safety of Abigail and Amanda if they were to return home and Petitioner were there.  (*Id*.)

Michigan State Police Detective Sergeant Rebecca Macarthur conducted the forensic examination of Petitioner's laptop computer and external hard drive. (Trial Tr. III, PageID.309-10.) She testified that there were 11 images or movies on Petitioner's laptop that were child pornography. (*Id*., PageID.310.)  She found 16 child-pornography movies on Petitioner's external hard drive.  (*Id*., PageID.317.) Nine of the movies on the external hard drive were identical to movies on the laptop. (*Id*.) Detective Sergeant Macarthur's testimony made clear that the files were not in the computer or hard drive by accident; it took very purposeful action for them to exist in the locations they existed on the devices.

After the prosecution rested, and the court denied Petitioner's directed verdict motions, the trial court asked Petitioner if he wanted to testify or remain silent:

> Court:  All right, Mr. Hansen, we've arrived at the point in the trial where it's your turn to make your decision.  Have you talked with Ms. Bryant about whether you want to testify in the case?
>
> Def.  Yes.
>
> Court:  You have an absolute right to take the witness stand and testify in your own defense if you want.  Do you understand that?
>
> Def.:  Yes, I do.
>
> Court:  You also have an absolute right not to take the witness stand, and I will forcefully instruct the jury that they cannot consider your silence against you.  Do you understand that?
>
> Def.:  Yes, I do.
>
> Court:  Which of those two choices would you like to make? Do you want to testify or remain silent?

Def.:   Remain silent.

Court:  Very well.  Do you think you've had enough time to talk to Ms. Bryant about this decision?

Def.:   Yes.

Court:  And is this your decision that's being made here today?  You're the one choosing to remain silent?

Def.:   To be honest with you, I'm kind of flip-floppy about it.  I wanted to make a statement, but, then again, I don't.

Court:  Okay.  Well, you obviously recognize that, if you chose to take the witness stand, you would be cross-examined, as well.  You wouldn't be able to just simply stand up there and say whatever you want to say.

Def.:   At this point in time, I do remain silent.

Court:  Are you sure that's what you want to do?

Def.:   Yes.

(Trial Tr. III, PageID.348.)

Between the last day of trial and the first date scheduled for sentencing, the Michigan Supreme Court decided *Hill*, 786 N.W.2d. at 601.  In *Hill*, the Michigan Supreme Court considered whether downloading child sexually abusive material from the internet and copying it to a disc for personal use constituted the making or production of child sexually abusive material.  The *Hill* court concluded it did not.  Considering the entire statutory scheme, the court determined that "making" or "producing" child sexually abusive material meant originating such material.  *Id.* at 608-09.  The mere duplication that occurs when one downloads material from the internet and copies it to a disc for personal use, was properly charged as possession of child sexually abusive material.  *Id.* at 603 ("Those who copy or duplicate existing

-6-

prohibited images for personal use do not produce or make child sexually abusive material under MCL 750.145c(2); rather, they are only in possession of it.")

The parties knew this issue was before the Michigan Supreme Court at the time of Petitioner's trial. It was referenced several times. When the time came for preparation of final jury instructions, the trial court discussed the issue with the parties. (Trial Tr. III, PageID.347-48.) The court noted it was bound to follow the Court of Appeals decision in *People v. Hill*, 715 N.W.2d 301 (Mich. Ct. App. 2006), which held that downloading child sexually abusive material from the internet and copying it to a disc constituted making or producing such material, even though it was possible that the Michigan Supreme Court's decision might alter the state of the law. (*Id.*) The trial court offered the parties the opportunity for an instruction on the lesser included offense of possession of child sexually abusive material.[4] The parties declined the offer.

The court instructed the jury and the parties made their closing arguments. The jury deliberated for slightly more than one hour before returning their verdicts of guilty on all four charges.

The court sentenced petitioner to a sentence of 2 years to 6 years on the possession conviction, consecutive to 2 years to 10 years on the use of a computer to commit a crime conviction, consecutive to concurrent terms of 25 years to 50 years on each criminal sexual conduct conviction.

Petitioner appealed his convictions to the Michigan Court of Appeals. He raised five issues:

---

[4]The trial court described the proposition as "all or nothing." (Trial Tr. III, PageID.347.) The court stated "if *Hill* is overturned, there would simply be a vacated conviction here with nothing behind it." (*Id.*) The court elaborated: "if the Supreme Court reverses *Hill*, then Mr. Hansen simply wins . . . [a]nd if they don't reverse *Hill*, you're none the worse for [wear] because under *Hill*, there's clearly enough to get to the [jury] and convict here." (*Id.*) The court's statements regarding the impact of a Michigan Supreme Court reversal in *Hill* ultimately proved to be inaccurate.

I.    Fundamental fairness and due process of law prohibit joinder of two distinct and separate charges involving completely different acts on separate dates.

II.    Improper other act and inadmissible opinion testimony denied defendant a right to a fair trial and due process of law.

III.    Where in a possession of child sexually abusive material case the evidence is that defendant had viewed one adult pornographic movie, the evidence is not constitutionally sufficient to sustain the conviction.

IV.    Defense counsel's failure to make proper objections and record was constitutionally ineffective assistance of counsel.

V.    Where defendant requested and paid for a polygraph examination, MCL 776.21, and was not afforded an opportunity for a polygraph examination, a new trial and opportunity for a polygraph examination are required.

(Def.-Appellant's Br. on Appeal, ECF No. 8-2, PageID.89.) Each issue was addressed in the Michigan Court of Appeals opinion affirming the convictions. *People v. Hansen*, Nos. 300603; 300616, 2012 WL 2126064 (Mich. Ct. App. June 12, 2012). Petitioner applied for leave to appeal in the Michigan Supreme Court. That court denied his application on November 20, 2012. Petitioner did not petition for certiorari to the United States Supreme Court.

On February 6, 2014, Petitioner timely filed his initial petition for writ of habeas corpus in this Court. (ECF No. 1.) He raised the five issues he raised in his direct appeal. Petitioner also filed a motion to stay the petition and hold the habeas case in abeyance pending his attempt to exhaust additional issues in the state courts by way of a motion pursuant to MICH. CT. R. 6.500 et seq. (ECF No. 5.) The Court granted Petitioner's motion.

During March of 2014, Petitioner filed his motion for relief from judgment in the Kent County Circuit Court raising eight issues:

-8-

VI.     Was the defendant denied the protections of the Double Jeopardy Clause of the Mich. Const. 1963 Art 1 § 15; and of the 5th Amendment United States Const., when the trial court imposed a conviction and sentence after the Mich[i]gan court of appeals ruled defendant's conduct was not prescribed by the statute he was prosecuted under and he distinctly pursued a defense of "all or nothing"?

VII.    Was the defendant denied the protections of the Mich. Const. 1963 Art. 1 § 20: and the United States Const. Amendment Sixth, where the defendant was convicted of an offense without a verdict entered by a judge or jury after trial?

VIII.   Was the defendant denied his right to due process of law under the Fourteenth Amendment of the United States Constitution and the Michigan Constitution 1963 Art. 1 § 20, when the circuit court illegally allowed the prosecution to file and the court proceeded to enter convictions and sentences on two offenses that were not supported by the jur[y's] verdict, an information contrary to the afore cited constitutional protections of due process and the specific statutory provisions of MCL 767.76 which governs amendments of the information?

IX.     Was the defendant denied his right to a fair trial under the due process clause of the state and federal constitution when the unrelated and different types of criminal charges were joined for trial where the prejudice of the type of offenses in issue would have surely lent to taint defendant's character?

X.      Defendant insists that there was insufficient evidence presented that he knowingly possessed child sexually abusive material and because he was tried under an erroneous theory to begin with hindered his ability to present an adequate defense and that his conviction and sentence on the necessarily lesser included offense was in error.

XI.     Did the trial court fail to conduct the proper evaluation required by *People v. Watkins*, 491 Mich. 450, 481-491 (2012), when it admitted the evidence of the defendant's crimes in one case in the other, denying defendant his right to a fair trial?

XII.    Was the defendant denied effective assistance of trial counsel in violation of the Sixth Amendment of the United States Constitution and the Mich. Const. 1963, Art 1 § 20.

XIII.   Was the defendant denied the effective assistance of appellate counsel in violation of the Sixth Amendment of the United States Constitution and the Mich. Const. 1963 Art. 1 § 20, when appellate counsel failed to raise more significant issues that

would have probably led to a reversal of the defendant's convictions and sente[n]ces than those appellate counsel did raise.

Pet., ECF No. 11, PageID.420-21.)  The trial court denied relief by order entered July 2, 2014. Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave to appeal on April 27, 2015 and March 29, 2016, respectively.

Petitioner filed his amended petition on May 31, 2016.  The amended petition raises the five issues he raised in his initial petition as well as the eight new issues from his post-conviction motion for relief.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally

difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts

-11-

enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## I. Joinder of the criminal sexual conduct and child pornography charges (habeas issues I, IX, and XI)[5]

Petitioner complains that he was denied due process when the court consolidated the two separate prosecutions for trial. Petitioner attacks the consolidation of the two cases on several levels. First he attacks it as a violation of state law, as expressed in MICH. CT. R. 6.120 and *People v. Tobey*, 257 N.W.2d 537 (1977).[6] "[A] federal court may issue the writ to a state prisoner 'only on the ground that

---

[5]The Michigan Court of Appeals refused to consider the issue on direct appeal concluding that Petitioner "waived this issue by affirmatively acquiescing in joinder of the charged offenses for trial." *Hansen*, 2012 WL 2126064 at *1. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention--whether in trial, appellate, or habeas proceedings, as state law may require--procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

[6]Although Petitioner cites the court rule and the *Tobey* case, his argument relies exclusively on the *Tobey* case. The Michigan Supreme Court, however, has recognized that MICH. CT. R. 6.120 supercedes *Tobey*. *People v. Williams*, 769 N.W.2d 605, 607 (Mich. 2009).

-12-

he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, violations of state standards for joinder will not warrant habeas relief.

Petitioner next raises a claim cognizable on federal habeas review when he complains that the joinder rendered his trial fundamentally unfair. The Sixth Circuit has recognized "[b]y allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charge[d]." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998)). "Misjoinder is not per se unconstitutional, but rises to that level if it results in prejudice so great as to deny a defendant his due process right to a fair trial." *Coley v. Bagley*, 706 F.3d 741, 753 (6th Cir. 2013) (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). "[A] risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible." *Davis*, 475 F.3d at 777. Unless a habeas petitioner

can show "evidence would have been inadmissible in a hypothetical separate trial . . . his claim fails." *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015).[7]

Petitioner has failed to demonstrate that the evidence of his possession of child pornography would have been inadmissible at a hypothetical trial on the criminal sexual conduct charges, or vice versa. At the hearing on the motion to consolidate, the trial court described as "most persuasive" the prosecutor's argument that, under MICH. COMP. LAWS § 768.27a, the evidence would be admissible in separate trials. (Consolidation Hr'g Tr., PageID.197.)  The Michigan Court of Appeals concluded "[t]he trial court properly exercised its discretion in granting the prosecution's motion to consolidate the charged offenses where evidence that defendant committed a listed offense against a minor would be admissible in each case under MCL 768.27a if the cases were tried separately."  *Hansen*, 2012 WL 2126064  at *4.

The admissibility of the evidence under the statute in hypothetical separate trials is purely an issue of state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

---

[7]The *LaMar* court noted further that even where a habeas petitioner is able to identify the requisite inadmissible evidence, he must still demonstrate unfair prejudice.  *LaMar*, 798 F.3d at 428.

Because the evidence from each of the initially separate prosecutions would have been admissible in the trial of the other, there can be no risk of undue prejudice from the joinder. Petitioner's habeas challenge to the consolidation of the two prosecutions has no merit.

In habeas issue XI, Petitioner invites the Court to delve one level deeper into this issue by contending that the state court's determination of admissibility in hypothetical separate trials violated his due process rights. State-court evidentiary rulings, even hypothetical ones, cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552. Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000).

Petitioner has not met this difficult standard. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due

process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has also found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Petitioner's habeas challenge to the hypothetical evidentiary ruling that supports the consolidation decision is, therefore, also without merit.

## II. The post-verdict amendment and entry of judgment regarding possession (habeas issues VI, VII, and VIII)

Petitioner challenges the trial court's post-verdict amendment of the information to change the charged offense from violation of MICH. COMP. LAWS § 750.145c(2), regarding making and producing child sexually abusive material, to violation of MICH. COMP. LAWS § 750.145c(4), regarding possession of child sexually abusive material, and then the court's subsequent conviction of Petitioner on the amended charge. Petitioner attacks this unconventional procedure on three grounds: violation of the Double Jeopardy Clause (habeas issue VI); violation of the Sixth Amendment right to trial by jury (habeas issue VII); and as an illegal amendment of the information under state law (habeas issue VIII). To prevail on any of his challenges, however, Petitioner must show that the state court's decision was contrary to or an unreasonable application of clearly established federal law. He has not succeeded in making that showing.

The factual foundation of the charge with respect to child sexually abusive material never changed. The prosecutor presented evidence that Petitioner had downloaded child sexually abusive movies

from the internet and copied them from his external hard drive to his laptop hard drive, thereby making or producing child sexually abusive materials. At the time of trial there was no question that, under *People v. Hill*, 269 Mich. App. 505 (Mich. Ct. App. 2006), downloading such material from the internet and copying it to disc constituted making and producing child sexually abusive material.

In reversing, in part, the court of appeals, the Michigan Supreme Court did not simply sever the link between "downloading and copying" and "making or producing;" it created a new link:

> A defendant who downloads child sexually abusive material from the Internet and burns the images to a CD–R, when there is no evidence the defendant had a criminal intent to do something other than possess the CD–R for his own personal use, may not be convicted of violating MCL 750.145c(2), which makes it a 20–year felony for any person who "arranges for, produces, makes, or finances" "any child sexually abusive material...." Rather, that person is properly convicted of knowing possession of child sexually abusive material in violation of MCL 750.145c(4), a 4–year felony.

*Hill*, 786 N.W.2d at 614-15. Thus, after *Hill*, "downloading and copying" might no longer violate MICH. COMP. LAWS § 750.145c(2), but it definitely violated MICH. COMP. LAWS § 750.145c(4).

After the Michigan Supreme Court issued its opinion in *Hill*, the trial court permitted the prosecutor to amend the information to include the possession charge and modify the charge relating to the use of a computer to provide a lesser penalty. The court then sentenced Petitioner on the amended charges. The trial court supported this manner of proceeding as follows:

> Our Supreme Court has indicated that the courts "'may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense.'" *People v. Williams*, 475 Mich. 101, 104, [715 N.W.2d 24, 25 (Mich. 2006)]. Following the decision in *Hill*, our Court of Appeals overturned a conviction under MCL 750.145c(2) and directed the trial court to convict and resentence the defendant under the lesser included offense of MCL 750.145c(4) in a matter almost identical to this case. *See People v. Norman*, No. 295833, [2011 WL 2694624] slip op. at 2 (Mich. [Ct.] App. July 12, 2011) (unpublished decision).

(Op., ECF No. 8-2, PageID.82-83.)[8]   The trial court relied on *People v. Williams*, 715 N.W.2d at 24. The court in *Williams*, in turn, relied on *Rutledge v. United States*, 517 U.S. 292 (1996). *Williams*, 715 N.W.2d at 25.

In *Rutledge*, the Supreme Court resolved a circuit split as to the proper procedure to follow when a criminal defendant is charged with a greater and lesser-included offense and convicted of both.   517 U.S. at 295-96.   Most circuits concluded that only one judgment and one sentence was appropriate; two circuits allowed judgment on both charges but only one sentence; and one circuit allowed both convictions and two sentences so long as the cumulative punishment did not exceed the maximum sentence on the greater charge.   *Id.*   The Court resolved the split in favor of one judgment and one sentence; however, that resolution depended in part on its identification of an appropriate remedy if the greater offense were to be overturned.   The Court explained:

> [T]he Government argues that Congress must have intended to allow multiple convictions because doing so would provide a "backup" conviction, preventing a defendant who later successfully challenges his greater offense from escaping punishment altogether-even if the basis for the reversal does not affect his conviction under the lesser. Brief for United States 20-22. We find the argument unpersuasive, for there is no reason why this pair of greater and lesser offenses should present any novel problem beyond that posed by any other greater and lesser included offenses, for which the courts have already developed rules to avoid the perceived danger.

> In *Tinder v. United States*, 345 U.S. 565, 570 (1953), the defendant had been convicted of theft from a mailbox and improperly sentenced to prison for more than one year even though the evidence only supported a misdemeanor conviction. Exercising our "power to do justice as the case requires" pursuant to 28 U.S.C. § 2106, we ordered the District Court to correct the sentence without vacating the underlying conviction. Relying on *Tinder* and the practice in "state courts, including courts governed by statutes virtually

---

[8]Even Petitioner describes the possession offense proscribed in Mich. Comp. Laws § 750.145c(4) as "a necessarily lesser included offense" of the making or producing offense proscribed in Mich. Comp. Laws § 750.145c(2). (Appellant's Mich. Ct. of App. Br., ECF No. 8-2, PageID.139.)

the same as Section 2106," the Court of Appeals for the District of Columbia Circuit later decided that its "power to modify erroneous judgments authorizes reduction to a lesser included offense where the evidence is insufficient to support an element of the [greater] offense stated in the verdict." *Austin v. United States*, 382 F.2d 129, 140, 141-143 (1967).

> Consistent with the views expressed by the District of Columbia Circuit, federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense. *See* 8A J. Moore, Federal Practice ¶ 31.03[5], and n. 54 (2d ed.1995); *United States v. Ward*, 37 F.3d 243, 251 (C.A.6 1994) (after finding insufficient evidence to support CCE count, Court of Appeals vacated CCE conviction and sentence and remanded for entry of conspiracy conviction, which District Court had previously vacated as lesser included offense of CCE), *cert. denied*, 514 U.S. 1030 (1995); *United States v. Silvers*, 888 F.Supp. 1289, 1306-1309 (D.Md.1995) (reinstating conspiracy conviction previously vacated after granting motion for new trial on CCE conviction). This Court has noted the use of such a practice with approval. *Morris v. Mathews*, 475 U.S. 237, 246-247 (1986) (approving process of reducing erroneous greater offense to lesser included offense as long as the defendant is not able to demonstrate that "but for the improper inclusion of the [erroneous] charge, the result of the proceeding probably would have been different"). *See also Jones v. Thomas*, 491 U.S. 376, 384-385, n. 3 (1989) (citing *Morris* ).

*Rutledge*, 517 U.S. at 305-06 (parallel citations and footnote omitted).

> The trial court's manner of proceeding in Petitioner's case, therefore, appears to be wholly consistent with the procedure described by the Supreme Court.  It simply cannot be said that the procedure the trial court followed was contrary to, or an unreasonable application of, clearly established federal law.

> Perhaps in recognition that *Rutledge* supports the trial court's decision, Petitioner turns to the additional requirement identified in *Morris v. Matthews*, 475 U.S. 237 (1986) (cited in *Rutledge*), claiming that "but for the improper inclusion of the [erroneous] charge, the result of the proceeding would have been different." *Id.* at 247.  Petitioner cannot succeed in that claim.

This is not a circumstance where proof of the greater charge involved some element that was not also part of the lesser charge and, thus, might have prejudiced the jury against Petitioner.

The prosecutor introduced evidence that Petitioner downloaded child sexually abusive material from the internet and copied it onto his laptop drive. Before *Hill*, that meant Petitioner made or produced child sexually abusive material; after *Hill*, it meant that Petitioner possessed child sexually abusive material. The evidence required to prove the lesser charge changed not a whit from that which was required to prove the greater charge pre-*Hill*. The only thing that changed was the name of statutory violation and the punishment. Under those circumstances, Petitioner cannot show that the result would have been any different had the case proceeded with the lesser charge in the first instance.

The trial court's entry of judgment and sentencing on the possession charge was wholly consonant with clearly established federal law. It did not run afoul of the Double Jeopardy Clause or the Sixth Amendment jury trial guarantee, and it is immaterial whether it violated state law with regard to the amendment of the information, as such a claim is not cognizable on federal habeas review. Petitioner's challenge to his conviction and sentence on the charge of possession of child sexually abusive material is without merit.

### III. Sufficiency of the evidence regarding knowing possession of child sexually abusive material (habeas issues III and X)

Petitioner challenged the sufficiency of the evidence on the possession charge in his direct appeal (habeas issue III) and in his post-conviction motion for relief (habeas issue X). The subject of both challenges is the same: Petitioner contends there was insufficient evidence that

his possession of the child sexually abusive material was *knowing*. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas

relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeal resolved Petitioner's sufficiency challenge on direct appeal as follows:

> Defendant next argues that insufficient evidence existed to prove that he knowingly possessed child sexually abusive material, MICH. COMP. LAWS § 750.145c(4). We review de novo a challenge on appeal to the sufficiency of the evidence, examining the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determining whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Ericksen*, 793 N.W.2d 120 (2010). Our Supreme Court has held that "the term 'possesses' in the phrase '[a] person who knowingly possesses any child sexually abusive material' in MCL 750.145c(4) includes both actual and constructive possession." *People v. Flick*, 790 N.W.2d 295, 298 (2010). "[A] defendant constructively possesses 'any child sexually abusive material' when he knowingly has the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons." *Id.* at 304.

> Here, the prosecution presented evidence that defendant downloaded 11 child-pornography movies to his computer and another 16 on a portable storage hard drive. The jury viewed two of these movies. The evidence in this case supports a finding that defendant constructively possessed the child sexually abusive material where he intentionally searched for child-pornography movies, downloaded them to his computer, and saved them in hidden files. The evidence also supports a finding that defendant had the power and the intent to exercise dominion or control over the child-pornography movies by saving them to a hidden folder on his internal hard drive and also onto a portable external hard drive. *See id.* Viewing the evidence in a light most favorable to the prosecution and resolving all evidentiary conflicts in its favor, a rational trier of fact could have found beyond a reasonable doubt that defendant knowingly possessed child sexually abusive material. *See Ericksen*, 793 N.W.2d at 122. Defendant emphasizes that the prosecution only proved that he viewed one adult-pornography movie. However, whether defendant viewed the child-pornography movies is not a relevant inquiry with respect to whether he knowingly possessed child sexually abusive material.

*Hansen*, 2012 WL 2126064 at *2-3 (parallel citations omitted).[9]

This Court is bound by the Michigan Court of Appeals interpretation of state law. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76). Thus, when the Michigan Court of Appeals declares what must be shown to establish "knowing" possession, this Court must accept that declaration. To the extent Petitioner's habeas challenge depends on the opposite conclusion, the challenge necessarily fails.

That is the case here. Petitioner's challenge is founded on the prosecutor's failure to provide evidence that he viewed the child-pornography movies. Petitioner contends that absent such evidence the prosecutor cannot establish knowing possession. The court of appeals says that Petitioner is wrong. As a matter of state law regarding knowing possession, whether Petitioner viewed the movies is irrelevant. *Hansen*, 2012 WL 2126064 at *3. This Court is bound by that statement of state law. Petitioner's sufficiency challenge, therefore, necessarily fails.

Moving beyond the specific insufficiency alleged by Petitioner, the factual determinations of the court of appeals with respect to Petitioner's knowing possession of the child sexually abusive material are patently reasonable. Moreover, its application of clearly established federal law, *Jackson*, was reasonable. On the record before the Court, a rational trier of fact

---

[9]Although the Michigan Court of Appeals cited a state court decision, *Ericksen*, the standard is the *Jackson* standard. The court in *Ericksen* relied upon *People v. Terry*, 569 N.W.2d 641, 644 (Mich. Ct. App. 1997) for a statement of the appropriate test. The court in *Terry*, in turn, relied upon *People v. Wolfe*, 489 N.W.2d 748, 750-51 (Mich. 1992). The court in *Wolfe* relied upon *Jackson*, 443 U.S. at 307.

could have found beyond a reasonable doubt that Petitioner knowingly possessed the child sexually abusive material.  Petitioner is not entitled to relief on his sufficiency claim.

## IV.   Challenges to the admission of evidence

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour*, 224 F.3d at 552 (quotation omitted); *accord Coleman*, 268 F.3d at 439; *Bugh*, 329 F.3d at 512.   The Sixth Circuit has applied the following standard in cases under the AEDPA:

> Habeas petitioners are not entitled to relief unless an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  A petitioner will prevail where "a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law" substantially affected a jury's verdict. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  However, we will grant federal habeas corpus relief only where a violation of a state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988).  "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F2d

-24-

921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999). Petitioner has not met this difficult standard with respect to any of the evidentiary rulings that he challenges.

### A. Ashlee's testimony regarding Abigail's report of Petitioner's masturbation

Petitioner complains that Ashlee Norton testified about her conversation with Abigail as follows:

> And I asked her, like, what goes on or what have you seen, or whatever, and she started tellin' me about a time where she saw him playin' with himself and watching a movie. I asked her what she was doing, and she said that she was laying down. I asked her if he knew that she was in the room, and she said, "Yes." I asked her what was she doin', and she said she was supposed to be sleeping. So I said that, you know, did he know that you were sleeping–did he know that you were awake, and she said, "No." She said he was playin with himself . . . .

(Trial Tr. II, ECF No. 8-2, PageID.286.) Petitioner contends that the evidence was irrelevant, prejudicial, and inflammatory; thus, a new trial is required. (Def.-Appellant's Br. on Appeal, ECF No. 8-2, PageID.108-09.)

The Michigan Court of Appeals rejected Petitioner's challenge to the admission of this testimony:

> Here, even assuming that the admission of this testimony was plain error, we find that the error would not warrant reversal because defendant has not established that its admission affected the outcome of his trial. *See People v. Carines*, 597 NW2d 130 (1999). Evidence that defendant was masturbating at night while watching an unspecified movie at a time when he believed the victim was sleeping was not so unfairly prejudicial as to move the jury to convict defendant for improper reasons. Furthermore, the testimony of the victim, Noorman, the examining physician at the Children's Assessment Center, the detective who executed the search warrant on defendant's home, the digital media expert,

and the remaining testimony of the mother's friend was strong evidence that defendant committed the crimes charged.

*Hansen*, 2012 WL 2126064 at *2 (parallel citation omitted). The court of appeals evaluation of the issue was consistent with, and not contrary to, clearly established federal law. *Brecht* requires inquiry into whether the error, if indeed there is error, "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623. That is the inquiry the court of appeals pursued. In light of the "strong evidence that [Petitioner] committed the crimes charged," as detailed by the court of appeals, *Hansen*, 2012 WL 2126064 at *2, the court's determination that the reference did not affect the outcome is eminently reasonable. Petitioner has failed to show that the fleeting reference to masturbation affected the outcome of his trial; accordingly, his challenge relating to this evidence has no merit.

> **B.** **The testimony of the physician's assistant that "something had happened" to Abigail and that Abigail and Amanda might not be safe**

Petitioner next contends that he was unfairly prejudiced by the erroneous admission of testimony from the physician's assistant. Petitioner complains first that the physician's assistant's testimony that "something had happened" was based solely on Abigail's statement and demeanor and, therefore, was inadmissible as testimony of subjective opinion with respect to Abigail's credibility. The court of appeals rejected the premise of Petitioner's argument:

> A review of the record reveals that [the physician's assistant] testified to the finding of protein and blood in the victim's urine, which was consistent with a bladder infection, and that protein in the urine can also be consistent with semen. On cross-examination, Noorman explained that her testimony was based on the victim's physical examination in conjunction with the victim's statements. Noorman's opinion that "something had happened" to the victim was not based solely on the victim's statements to her; rather, it was also on the basis of her expertise as a physician's assistant and observations during

-26-

her physical examination of the victim—particularly her observation that the victim had a bladder infection for the first time in her life. In sum, there is no plain error because the testimony was admissible.

*Hansen*, 2012 WL 2126064 at *1 (footnote omitted). This Court must presume that the court of appeals' factual finding with regard to the basis for the physician's assistant's is correct. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Jago*, 888 F.2d at 407 n.4; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner can overcome that presumption with clear and convincing evidence. He has not done so and, on this record, he cannot. On cross-examination the physician's assistant clearly explained that her conclusion was based on more than Abigail's statements. (Trial Tr. III, PageID.333.) In addition, this Court is bound by the court of appeals conclusion that the testimony was admissible as a matter of state law. *Stumpf*, 722 F.3d at 746 n.6. Thus, there is no error upon which to predicate the *Brecht* inquiry.

To succeed on his challenge, therefore, Petitioner must show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Petitioner has not even attempted to make that showing. Accordingly, his challenge is without merit.

Petitioner also complains that the physician's assistant improperly testified that she was concerned for the safety of Abigail and Amanda Hansen if they returned home and Petitioner were there. Petitioner argues that the testimony was inadmissible. The court of appeals agreed. *Hansen*, 2012 WL 2126064 at *1 n.1. Nonetheless, the court of appeals refused to act upon the error because Petitioner had, in their opinion, abandoned it. *Id.* Looking past Petitioner's

procedural default,[10] Petitioner cannot succeed on his habeas challenge because he has not shown that the fleeting reference to Petitioner's dangerousness "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623.

### C. Improper "civic duty" testimony

Petitioner contends that Detective Sergeant Macarthur appealed to the jurors' sense of "civic duty," essentially asking the jury to look beyond the particulars of Petitioner's case to the problem of child pornography generally, when she testified about the "Vicky" series of child pornography movies. When the prosecutor asked Detective Sergeant Macarthur about the title "Vicky" in the list of movies on Petitioner's computer and external hard drive, Macarther responded:

> Yes, "Vicky" is what we call a child porn series based on the young girl's name. She's a real person that was later found by the police. They found her offender, and they had a criminal case, and so they proved basically that she was actually under age during the taping of the sex videos.

(Trial Tr. III, PageID.315.)

Although arguments and testimony "calculated to incite the passions and prejudices of the jurors [or] appeals to the jury to act as the community conscience" may be improper, they "are not per se impermissible." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)) (internal quotes

---

[10]*See* note 5, *infra.*

-28-

omitted).  This brief explanation of an otherwise uninformative video file title does not, on its face,

appear to be calculated to incite passion, nor does it seem to invite the jury to address the child

pornography generally instead of the specifics of Petitioner's case.  That was the conclusion

reached by the Michigan Court of Appeals:

> Defendant's contention that the testimony was "civic duty testimony" is meritless; a review of the record reveals that the description was made in the context of explaining some acronyms and titles used on the list of downloads from defendant's computer.  Moreover, the testimony was relevant because the fact that a "Vicky" child-pornography movie was downloaded to defendant's computer had a tendency to make the existence of defendant's possession of child sexually abusive material more probable than it would have been without the testimony.  See MRE 401.  Thus, there is no plain error because the testimony was admissible.

*Hansen*, 2012 WL 2126064 at *2.  The court of appeals' binding determination that, as a matter

of state law, the testimony was directly relevant to Petitioner's case, precludes any argument that

the testimony was elicited to improperly incite the passions of the jury.  Petitioner has failed to show

that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme

Court on a question of law or that the state court decided the evidentiary issue differently than the

Supreme Court did on a set of materially indistinguishable facts.  *Sanders*, 221 F.3d at 860.

Therefore, his challenge is without merit.

## V.    The polygraph

Michigan statute requires that a polygraph examination shall be given to a defendant

who allegedly has committed, among other offenses, first-degree criminal sexual conduct, if the

defendant requests it.  MICH. COMP. LAWS § 776.21(5).  Petitioner indicates he requested such

an examination but never received it.  He claims that deficiency prejudiced him in negotiating a plea,

trial preparation, and sentencing.  (Def.-Appellant's Br. on Appeal, ECF No. 8-2, PageID.122.)

The Michigan Court of Appeals was not convinced:

> In this case, the record reveals that defendant wrote a letter to his defense counsel insisting that he be given a polygraph examination, and he sent a copy of the letter to the trial court judge before trial.  Defendant has not established, however, that his failure to receive the examination affected the outcome of the lower court proceedings.  *See* [*People v. Carines*, 597 N.W.2d 130 (Mich. 1999)].  It is speculative whether he would have passed a polygraph examination if one had been administered.  And, even if he had passed a polygraph examination, the results would have been inadmissible at trial.  *People v. Phillips*, 666 N.W.2d 657 (Mich. 2003).  Furthermore, defendant has also not shown that a "passed polygraph" would have affected the prosecutor's plea offer, the prosecutor's decision to proceed to trial, or his sentence.  Accordingly, defendant is not entitled to relief on this issue.

*Hansen*, 2012 WL 2126064 at *3 (parallel citations omitted).

Petitioner claims entitlement to the polygraph examination under state law.  Habeas relief is not available for violations of state law.  Petitioner offers no authority that holds he has a federal constitutional right to the polygraph examination by virtue of the state law right or otherwise.  Absent such authority, specifically in the form of Supreme Court precedent, there is no clearly established federal law that the state court's determination could be inconsistent with or contrary to.  *See e.g. Carey v. Musladin*, 549 U.S. 70, 77 (2006).

If Petitioner had taken the test it could not have had a constitutionally significant evidentiary impact on the jury's verdict because the test results would not be admissible as evidence in criminal cases in Michigan.  *People v. Phillips*, 666 N.W.2d 657, 661 (Mich. 2003) (citing *People v. Ray*, 430 N.W.2d 626, 628 (Mich. 1988); *People v. Barbara*, 255 N.W.2d 171, 175 (Mich. 1977)).  The court of appeals concluded that any other potential benefits were wholly speculative.  That factual finding is presumed correct and Petitioner has offered no evidence,

much less clear and convincing evidence, to overcome the presumption.  Petitioner's habeas claim regarding the polygraph examination is without merit.

### VI.   Ineffective assistance of trial and appellate counsel

Petitioner contends that his trial counsel was ineffective for failing to object to the errors he has raised in his habeas petition and for inadequately investigating and preparing Petitioner's defense.  His appellate counsel was similarly ineffective for failing to raise the errors he raised in his post-conviction motion.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The Michigan Court of Appeals rejected each claim of ineffective assistance that Petitioner raised on his direct appeal either because the objection not made was futile or because no prejudice resulted. *Hansen*, 2012 WL 2126064 at *3-4. As set forth above, as to each of the direct appeal issues, the court of appeals determination has ample support. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Thus, Petitioner's challenges to trial counsel assistance that are premised on his meritless statements of Michigan law with respect to joinder, *knowing* possession, admissibility issues, and the amendment of the information, cannot support an ineffective assistance claim.

The trial court rejected Petitioner's Rule 6.500 motion claims of ineffective assistance of trial counsel. The trial court stated:

> Hansen fails to convince the Court that actual prejudice resulted from the alleged ineffective assistance. First, defense counsel was not ineffective for failing to object to the amended information charging Hansen with possession of child sexually abusive material because such an amendment was proper. Second, the remaining claims for ineffective assistance relate to trial strategy, and the Court cannot "substitute [its] judgment for that of counsel on matters of trial strategy[.]" *See People v. Unger*, 278 Mich App 210, 242-243 (2008).

(Op. & Order, ECF No. 8-2, PageID.84.)  With respect to the amended information, for the reasons set forth above, the trial court's determination that an objection would have been futile is patently reasonable. Moreover, the trial court's presumptively correct determination that Petitioner's other new complaints relate to trial strategy, effectively ends the habeas analysis.  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance. *Strickland*, 466 U.S. at 689.  Matters of trial strategy, such as determinations regarding which witnesses to present and what questions to ask, are presumed correct and are generally not evaluated in hindsight or second-guessed upon habeas review. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).  Petitioner's claim that his trial counsel rendered constitutionally ineffective assistance is without merit.

Petitioner's claim with respect to his appellate counsel fares no better.  The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  As set forth fully above, the issues appellate counsel failed to raise were meritless.

Petitioner has failed to demonstrate that the state court's resolution of his ineffective assistance claims was contrary to, or an unreasonably application of, clearly established federal law. Accordingly, his claims of ineffective assistance are properly dismissed.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

-33-

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by

-34-

demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:   September 27, 2016          /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge